## BENEFICIAL FINANCE COMPANY OF VIRGINIA

### V.

## STATE CORPORATION COMMISSION

Record No. 850512

January 17, 1986

Present: All the Justices

530

*William H. Schwarzschild, III (Williams, Mullen & Christian, P.C.,* on brief), for appellant.
*William F. Schutt (Lewis S. Minter,* on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

This is an appeal of right from the State Corporation Commission. In order to understand this dispute fully, we must focus upon a series of events, some of which pre-date the filing of the case under review. The Commission recited this history in its final order.

Beneficial Finance Company of Virginia (Beneficial) is a regulated lender under the Virginia Consumer Finance Act. Pursuant to Code § 6.1-267,* a regulated lender cannot conduct any "other

---

*Code § 6.1-267 reads in pertinent part as follows:

business" in the regulated office without first obtaining authority from the Commission to do so.

In 1980, Beneficial and its mortgage lending affiliate, Beneficial Mortgage Company of Virginia (Beneficial Mortgage), requested permission, under Code § 6.1-267, for Beneficial Mortgage to make mortgage loans in the same offices where Beneficial made consumer loans. On June 10, 1980, the Commission granted the request subject to the conditions set forth in its "Rules Governing Real Estate Mortgage Business Done In Licensed Small Loan Offices" (Real Estate Rules). Rules 8 and 9 of the Real Estate Rules provide as follows:

> (8) Insurance, other than credit life or credit accident and health insurance, will not be sold by an affiliated entity of the licensee in connection with any loan made or purchased.
> (9) Collateral other than a lien on real estate will not be taken in connection with any loan made or purchased by the licensee's affiliate.

Beneficial made no complaint about these conditions when they were imposed.

In May 1981, Beneficial requested the right to sell personal property insurance in its licensed consumer finance offices. In a June 1981 meeting with members of the Commission, Beneficial agreed that its request to sell insurance was made pursuant to Code § 6.1-267. By order dated July 31, 1981, the request to sell insurance was granted subject to certain conditions. Pertinent here is the condition that "[t]he principal amount of the loan in connection with which such insurance is sold be not less than $600.00."

---

No licensee shall conduct the business of making loans under this chapter within any office, suite, room, or place of business in which any other business is solicited or engaged in, or in association or conjunction with any other business, unless authority to do so is first given by the Commission or by the Commissioner. Upon receipt of written application for such authority the Commission or the Commissioner shall investigate the facts and, if it be found that the character of the licensee and the nature of the other business warrant belief that the conduct of the other business would not conceal or facilitate violation or evasion of this chapter or of regulations lawfully made thereunder, it or he shall in writing, grant the authority applied for. If it is not so found it or he shall deny such authority in writing.

Following the July 1981 order, Beneficial could, in one office, make consumer finance loans, mortgage loans, and sell property insurance. However, the conditions imposed by the Real Estate Rules and those stated in the July 1981 order were in effect. By the fall of 1982, a controversy had arisen between Beneficial and the Commission's Bureau of Financial Institutions because of a practice by Beneficial and Beneficial Mortgage of taking liens on personalty in connection with mortgage loans and selling property insurance on this additional collateral. The Bureau contended that this practice violated Real Estate Rules 8 and 9. This dispute led to the instant proceeding.

By letter dated September 23, 1982, Beneficial requested as follows:

> that Rules (8) and (9) of [the Real Estate Rules] be replaced, so as to give proper recognition to changing business conditions while still maintaining a fair and effective balance between the needs of the industry and the interests and protection of the consumer. We respectfully request, therefore, that the present Rules (8) and (9) be rescinded and the following Rules (8) and (9) be adopted in their place.

The letter then set forth the proposed new rules. In addition, referring to the Commission's July 1981 order regarding the sale of property insurance, Beneficial requested that condition 4 of that order be changed "to reduce the minimum principal amount of loan in connection with which household contents insurance may be sold from $600 to $300." The rules changes were all that was requested in this letter. The Commission denied the requested changes. We think the Commission correctly decided this matter; therefore, we will affirm its decision.

Though Beneficial advances several arguments, many overlap and most suggest that Beneficial was not afforded due process in the proceeding before the Commission. None of the arguments has merit.

Beneficial's threshold problem is its misunderstanding where the burden of proof lay in the proceeding it initiated by its September 23, 1982 letter. On brief, Beneficial contends that the standard by which the Commission was required to consider the request to modify Real Estate Rules 8 and 9 is set forth in Code §

6.1-267. In oral argument, Beneficial amplified this position and said that Code § 6.1-267 was the essence of its request to rescind Real Estate Rules 8 and 9. The gravamen of Beneficial's position is its contention that in a proceeding under Code § 6.1-267 the Commission has the burden of investigating the facts and if no contrary facts are found the request "shall" be granted. Thus, according to Beneficial's view, Beneficial was not required to develop any evidence.

Beneficial is mistaken. A request to rescind or modify conditions previously imposed upon authorizations to conduct "other business" pursuant to Code § 6.1-267 is not a request to conduct other business. Beneficial's September 23, 1982 letter makes no request that Beneficial be allowed to conduct any "other business" in its licensed consumer loan offices. Consequently, this was not a proceeding under the statute but a proceeding to challenge existing Commission rules and conditions. In such a situation, the burden is on the party challenging the rules and conditions to prove that a change is necessary.

■ In this case, Beneficial failed to prove any facts. No showing of any kind concerning the need to alter Real Estate Rules 8 and 9 and condition 4 was ever made. This is not surprising in light of the fact that Beneficial took the position that it had no duty to develop any evidence. In oral argument, Beneficial admitted that the "evidence below was sparse." In our opinion, it was less than sparse; it was nonexistent. The absence of evidence means a failure on Beneficial's part to meet its burden of proof. Thus, the Commission had every right to reject the proposed change.

Beneficial next argues that it was not given an opportunity to present evidence. According to Beneficial, the proceeding before the Commission was informal and therefore Beneficial has a continuing right to demand a formal proceeding where it can develop the evidence it failed to develop below. We do not agree.

■ Though the matter began as an informal proceeding, the Commission converted it into a formal proceeding in which Beneficial was afforded ample opportunity to develop and present "any information" it wanted the Commission to consider. Rule 5:1 of Rules of Practice and Procedure of the State Corporation Commission (hereinafter referred to as "Commission Rule ___"), recognizes "both formal and informal proceedings." According to

Commission Rule 5:4, "Informal proceedings may be commenced by letter. . . ." The proceeding in this case was commenced by the September 23, 1982 letter. Thus, this case began as an informal proceeding.

Commission Rule 5:4 also sheds light on the manner in which informal proceedings are handled once commenced. They are "handled with the parties affected, *by correspondence* or otherwise, *with the object of resolving* the matter *without formal order or hearing*. . . ." (Emphasis added.) The words emphasized in the foregoing portion of Commission Rule 5:4 suggest that informal proceedings are marked by the reliance upon correspondence and the absence of formal orders. In this case, a formal order was entered and the submissions were not by correspondence but by more formal documents in the nature of pleadings, briefs, and memoranda. In short, considering the language of Commission Rule 5:4, the record in this case does not have the appearance of an informal record.

Commission Rule 5:6 is of central importance because Beneficial claims a right under this rule to another proceeding before the Commission. The rule provides as follows:

> The instigation of an informal proceeding is without prejudice to the right thereafter to institute a formal proceeding covering the same subject matter. *Upon petition of any aggrieved party, or upon its own motion if necessary for full relief, the Commission will convert any unresolved valid complaint to a formal proceeding* by the issuance of a rule to show cause, or by *an appropriate order setting a formal hearing*, upon at least ten (10) days notice to the parties, or as shall be required by statute.

(Emphasis added.) Beneficial argues on brief that its letter was "not sufficient to commence a formal proceeding." As a result, Beneficial says, because it initiated an informal proceeding, it can now choose to initiate a formal proceeding.

■ Beneficial misreads Commission Rule 5:6. First, only "unresolved" valid complaints may be converted to formal proceedings. It was not until after this matter was resolved that Beneficial requested a formal proceeding. Under Commission Rule 5:6, Beneficial was too late.

Moreover, though Beneficial started an informal proceeding, the Commission, acting on its own motion, converted it to a formal proceeding by order dated December 17, 1982. Such a conversion is plainly contemplated by Commission Rule 5:6, which states in part that "upon its own motion if necessary for full relief, the Commission will convert any unresolved valid complaint to a formal proceeding."

The December 17, 1982 order is entitled "Order Establishing A Proceeding." The order recites the changes proposed by Beneficial. It then makes the following statement concerning the possible widespread effect of the proposed changes:

> It appearing to the Commission that the proposed rule changes, if permitted, would affect other companies which conduct mortgage lending and property insurance businesses in their consumer finance offices, and could have an impact on interests outside the consumer finance industry, the Commission is of the opinion, in view of Rule 4:12 of its Rules of Practice and Procedure, that reasonable notice and an opportunity to be heard should be given all interested parties with respect to the proposed rule changes.

The order requires that "a proceeding be established," a case number be assigned, and "a date be *reserved for a hearing in this matter, should one be required*." (Emphasis added.) The order also requires that Beneficial "and every other participating party *submit its position in writing, together with any information and/or argument* in support of its position it wishes the Commission to consider not later than January 17, 1983." (Emphasis added.) Finally, the Commission provided for either a "hearing" or an "evidentiary hearing" and ordered that "in the event the Bureau or any participating party believes a hearing is required for proper consideration of this matter, it file *a request for hearing — and the basis for such request — not later than January 24, 1983*. Any such request shall specify whether an evidentiary hearing is sought." (Emphasis added.)

Beneficial contends that the December 17 order did not convert the proceeding from an informal to a formal one because the order does not use the word "formal." This argument is untenable. It exalts form over substance. In our opinion, the December 17,

1982 order is an "appropriate order setting a formal hearing," as contemplated in Commission Rule 5:6; it was sufficient to establish a formal proceeding. After the December order, Beneficial lost any right it may have had to demand a formal proceeding.

■ Further, the provisions of the December order belie Beneficial's contention on appeal that it did not have the opportunity to present relevant evidence. Beneficial was ordered to submit its position in writing together with "any information and/or argument" it wished the Commission to consider. In response to this broad opportunity to put before the Commission whatever information it wished, Beneficial responded with a three-paragraph submission devoid of facts and replete with conclusions of law and fact. For example, all Beneficial said about its proposed changes of the Real Estate Rules and the insurance condition was as follows: "it is perfectly lawful, proper and usual for mortgage companies operating in Virginia to (a) sell insurance, (b) take collateral other than on real estate, and (c) to insure loans less than $600.00." Plainly, Beneficial did not avail itself of its initial opportunity to present information to the Commission.

■ Further, the December order gave Beneficial the opportunity to request a hearing if Beneficial believed a hearing was required. Such a request should have been made by January 24, 1983. Beneficial made no such request. It cannot now complain of the lack of a full evidentiary hearing.

Beneficial makes reference to what it describes as an informal proceeding that was held in this case on April 21, 1983. It then uses events that occurred after that date to support its contention that the proceeding below was informal. This is a distorted view of the facts.

The formal nature of the proceeding was established by the December order. Once the deadlines set forth in that order had passed, the Commission could have disposed of the case. The fact that the Commission agreed to allow Beneficial to develop additional information informally did not change this formal proceeding back into an informal one. Nor does it mean that Beneficial's right to develop information was improperly circumscribed. In reality, the Commission gave Beneficial a greater opportunity to be heard than Beneficial was entitled to.

Beneficial's final attack on the Commission's order is based on the principle of repeal by implication. In this argument, Beneficial submits that the Commission's July 1981 order, which granted Beneficial authority to sell property insurance, repealed by implication Real Estate Rule 9. In essence, Rule 9 forbids a mortgage lender operating in a licensed consumer finance office from taking collateral other than a lien on real estate in connection with its mortgage loans. Beneficial explains that in its request to sell property insurance, it specifically asked the Commission to modify Real Estate Rule 9 so as to permit Beneficial "in connection with real estate mortgage loans . . . to take, as additional security for such loans a Security Agreement covering personal property" and to permit the sale of "household contents insurance" regarding the additional collateral. Beneficial contends that when the Commission entered its July 1981 order, the Commission thereby impliedly repealed Real Estate Rule 9. We do not agree.

In advancing its argument regarding repeal by implication, Beneficial relies on cases concerning statutes. Real Estate Rule 9 is not a statute. Indeed, according to the Commission, Real Estate Rule 9 is not even a rule of general application adopted in a rulemaking proceeding as described in Code § 12.1-28. Instead, it is a condition imposed by the Commission in furtherance of the policy objectives of Code § 6.1-267. In this situation, the principle of repeal by implication has no application.

■ In its final order, the Commission considered and rejected the repeal by implication argument. Its rationale was as follows:

> Admittedly, the authorization in the July 31 order is vague. Inartful drafting leaves it vulnerable to the interpretation that it supersedes Rule 9. However, such an interpretation hinges on giving unwarranted significance to what is actually a gratuitous recital. The heart of the order, its authorization provision, merely grants Beneficial Finance permission to conduct consumer finance lending in offices where "the property insurance described above is sold" and authorizes "such operation." The July 31 order gives no indication that the Commission was aware of any possible conflict with existing Real Estate Rules, much less that such a conflict was resolved in favor of overturning Rule 9. In circumstances that demanded express nullification, the order

manifests no intent to revoke the prohibition against non-real estate liens on mortgage loans.

We find the Commission's explanation persuasive. Real Estate Rule 9 was not repealed by implication by the entry of the July 1981 order.

For all the foregoing reasons, the judgment of the Commission will be affirmed.

*Affirmed.*